IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| James J. Prince, | : | |
| Plaintiff | : | Civil Action 2:13-cv-00035 |
| v. | : | Judge Watson |
| Dr. Cha, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

**Report and Recommendation**

Plaintiff James J. Prince, a State prisoner, brings this action under 42 U.S.C. § 1983 alleging that defendants have exhibited deliberate indifference to his serious medical needs and have retaliated against him for filing grievances. This matter is before the Magistrate Judge on defendants Dr. Cha, Dr. Keaton, Dr. Stein, Nurse Shortt-Tucker and North Central Correctional Complex ("NCCC")'s February 28, 2014 motion for summary judgment (doc. 35).

    **I.**    **Allegations in the Complaint**

Plaintiff suffers from a serious medical condition of a damaged left ankle known as osteomyelitis. He requires a cane to stand and walk, and this condition causes him significant pain. Prior to his incarceration, plaintiff was treated by Dr. Stahel, a doctor with Denver Health Care. Initially, Dr. Stahel wanted to amputate plaintiff's left foot; but on August 30, 2011, Dr. Stahel recommended that plaintiff follow up on an elective

1

basis with a different provider. Plaintiff maintains that Dr. Stahel's statement contained false statements: that plaintiff made an angry outburst; that he could walk without crutches; and that he was not in significant pain. Plaintiff filed a complaint against Dr. Stahel as a result of his statements.

Plaintiff was next seen by Dr. John Gehred, a doctor with Park Hill Family Health Center. Dr. Gehred prescribed morphine sulfate 30 mg six times per day and Oxycodeine, 10 mg four times a day for breakthrough pain. Dr. Gehred recommended that plaintiff undergo corrective surgery.

In February 2012, plaintiff was incarcerated at NCCC. Dr. Cha conducted plaintiff's initial medical examination. Plaintiff showed Dr. Cha his damaged left ankle, which exhibited swelling and discoloration. Plaintiff reported throbbing and stabbing pain, disrupted sleep and stress due to significant pain. Plaintiff informed Dr. Cha that he required corrective surgery. Dr. Cha indicated that no corrective surgery was allowed. Dr. Cha prescribed a minimum amount of Ultram and Neurontin. Plaintiff maintains that these medications did not alleviate his pain.

On April 6, 2012, Dr. Cha committed sexual misconduct. Ms. Hensley, the Health Care Administrator, witnessed the misconduct and issued a written statement apologizing for Dr. Cha's conduct. Plaintiff filed an informal complaint and grievance against Dr. Cha for sexual misconduct.

Dr. Cha referred plaintiff to a podiatrist, Dr. Tabbert. Dr. Tabbert recommended that plaintiff stay on his current paid medications and be seen by a pain specialist.

After plaintiff's grievance against Dr. Cha was found to be untimely, Dr. Cha retaliated against plaintiff by terminating his pain medications. Dr. Keaton began treating plaintiff instead of Dr. Cha. Dr. Keaton ignored plaintiff's reports of serious pain and indicated that there was no record of a serious medical condition or any need for corrective surgery. Dr. Keaton stated that he did not want to get involved with the "politics" between plaintiff and Dr. Cha.

The amended complaint (doc. 7) contains the following additional allegations. On February 4, 2013, defendants plaintiff received medical records from A.B.Q. Health Care. After reviewing his records, defendant Shortt-Tucker asked plaintiff about his current symptoms. Plaintiff reported significant pain in his neck, limited range of motion, sharp and throbbing pain, migraines, and numbness in his legs. Shortt-Tucker stated that plaintiff had degenerative discs in his spinal column. She informed plaintiff, however, that she could not prescribe him any more pain medication because of State Medical Director Dr. Eddy who had a personal crusade against pain medications. Plaintiff is not certain whether Shortt-Tucker's refusal to prescribe him additional pain medications was the result of deliberate indifference, Dr. Eddy's crusade, or her participation in conspiracy to violate plaintiff's due process and equal protection rights in conjunction with Dr. Cha and Dr. Keaton.

## II. Arguments of the Parties

### A. Defendants

Defendants Dr. Cha, Dr. Keaton, Dr. Stein, and Nurse Shortt-Tucker provided medical care and treatment to plaintiff while he was incarcerated at NCCC. Defendants maintain that plaintiff's claims are based on his disagreement with the treatment defendants provided him based on their refusal to provide him pain medications. Defendants argue that because plaintiff received numerous examinations, which included care and treatment, he cannot establish a claim for deliberate indifference. Even gross negligence is insufficient to establish an Eighth Amendment violation. Defendants maintains that because the dispute is not over whether plaintiff received treatment but rather his belief that the care he received was inadequate, his claim is not actionable. Defendants also argue that plaintiff has failed to produce any expert testimony to support his assertion that the medical care and treatment defendants provided fell below the applicable standard of care. Drs. Cha and Keaton provided affidavits stating that the medical care defendants provided did not proximately cause plaintiff any injuries in this case.

Defendants argue that plaintiff is unable to prove either the objective or subjective component to his deliberate indifference claim. Defendants maintain that plaintiff's inability to establish a prima facie case of medical malpractice is fatal to his claim for deliberate indifference to a serious medical need.

Defendants also argue that plaintiff is unable to prove a retaliatory act. Dr. Cha stated in his affidavit that he was unaware of any grievances filed against him by plaintiff.

Defendants further argue that NCCC cannot be liable based on the theory of respondeat superior and that defendants are entitled to judgment on plaintiff's derivative claims of retaliation and conspiracy.

### B. Plaintiff

Plaintiff argues that he has proven the objective and subjective components of his deliberate indifference claim. Plaintiff maintains that he has demonstrated the objective component of his claim. Plaintiff's serious medical conditions include degenerative disc disease in his neck, debridged calacaneous of the left ankle, neuropathy, and severe arthritis. Dr. Stahel, a chief surgeon with Denver Health, recommended that plaintiff be seen by a limb salvage specialist. Dr. Tabbert, a podiatrist, recommended that plaintiff undergo a left ankle fusion. Dr. Tabbert also recommended that plaintiff stay on pain medications. Plaintiff reported that he was in significant pain.

Plaintiff argues that defendants were aware of the recommendations of his medical providers and his complaints of pain, but defendants deliberately ignored their recommendations and his complaints and left him in significant pain. Plaintiff argues that frequent examinations do not necessarily preclude a finding of deliberate indifference when defendants knew the extent of his pain, that the course of treatment

was largely ineffective, and refused to do anything more to improve plaintiff's condition.

Plaintiff maintains that Dr. Cha's statement that he was not aware of plaintiff's complaint against him is untrue because plaintiff complained directly to Dr. Cha. Plaintiff also maintains that Dr. Keaton was aware of the alleged misconduct of Dr. Cha because he wrote a statement in plaintiff's medical file regarding his desire to not get involved in the politics between Dr. Cha and plaintiff.

Plaintiff argues that he has established a claim for retaliation in violation of the First Amendment by showing that Dr. Cha took away his pain medications based on plaintiff's complaints of his sexual misconduct. Plaintiff argues that the threat of discontinuation of pain medications would deter an inmate from making a complaint. Plaintiff maintains that if there had been a legitimate reason for discontinuing his medication, then Dr. Cha would not have reinstated his medication a few months later.

Plaintiff further argues that he has a claim for humiliation against Dr. Keaton. According to Prince, Dr. Keaton humiliated him by ordering that plaintiff's medications be crushed in order to discourage him from prosecuting this action. Plaintiff maintains that there was no medical reason or order for crushing his medication, and Health Care Administrator Mrs. Boblenz admitted that Dr. Keaton's crush order was illegal. Plaintiff maintains that defendants claimed he was "cheeking" his medication, which was not true. Plaintiff also contends that the Food and Drug Administration does not recommend crushing Tramadol.

Plaintiff also asserts a claim for humiliation against Dr. Stein because he had knowledge of plaintiff's suit against Dr. Keaton. Dr. Stein discontinued plaintiff's pain medication and ordered that his Neurontin be crushed on the false assertion that plaintiff's liver enzymes were high and that his medicine level was low. When plaintiff brought this action, Dr. Stein told plaintiff that pain was a part of life and that his injury did not warrant narcotics.

Plaintiff submitted the following documents in support of his memorandum in opposition to defendants' motion for summary judgment:

- <u>An August 26, 2011 treatment note prepared by Dr. Stahel of the Denver Health Medical Center</u>. Prince was described as aggressive and disruptive. Prince demanded to be scheduled for surgery. Dr. Stahel opined that surgical revision remained questionable and that there was no urgent or emergent indication for surgery in terms of acute threat to limb or life. Instead, he recommended further diagnostic work-up. Because Dr. Stahel believed that the patient-physician relationship had been severely breached, he recommended that plaintiff seek follow up treatment with a different provider, such as the limb salvage group under the guidance of Dr. Wilkins. Doc. 68-1.

- <u>An April 13, 2012 letter from Nurse Hensley to plaintiff concerning Dr. Cha's inappropriate statements</u>. Nurse Hensley apologized for Dr. Cha's comments and stated that appropriate action had been taken regarding the incident. Doc. 68-2.

- <u>A September 4, 2012 Decision of the Chief Inspector on a Grievance Appeal</u>. Plaintiff's allegations related to prior grievances and the chief inspector would not review them again. Doc. 68-3.

- <u>A December 20, 2013 Decision of the Chief Inspector on a Grievance Appeal</u>. Plaintiff had filed grievances concerning the crush order for his medication. The crush order was removed. Doc. 68-4.

- <u>A February 5, 2014 Decision of the Chief Inspector on a Grievance Appeal</u>. The decision noted that his medical file indicated that his liver enzymes were elevated and that this was why the Ultram was discontinued. The Neurontin was ordered to be crushed because Prince's level was lower than the therapeutic range. The decision further stated that a physician can approve a crush order based on finding that the level was lower than it should have been. Doc. 68-5.

- <u>Plaintiff's handwritten note concerning Dr. Cha's statements and Nurse Hensley's response</u>. Plaintiff asked that the matter be addressed. Nurse Hensley indicated that she appreciated him bring the matter to her attention. Doc. 87-1 at PageID # 442.

- <u>An October 15, 2012 Decision of the Chief Inspector on a Grievance concerning plaintiff's dissatisfaction with the disposition concerning Dr. Cha's statement</u>. Plaintiff's grievance was denied because filing a grievance directly against the inspector on the same issue that was previously grieved will not serve as an additional means of grieving or appealing the earlier grievance. Doc. 87-1 at PageID # 443.

- <u>An April 15, 2013 email from Nurse Shortt-Tucker stating that she is not going to return to work</u>. In the email she states that she is being sued by an inmate because he was not given the pain medications he wanted. Doc. 87-1 at PageID # 444.

### III.  Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B)

8

showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

IV.     Discussion

A.     Deliberate Indifference to a Serious Medical Need

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate an Eighth Amendment deprivation, a prisoner must show that a prison official acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 103-04. Prison officials are liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Mere negligence does not constitute deliberate indifference. *See, Estelle*, 429 U.S. at 106. Further, a prisoner does not state a claim merely by pleading that he disagrees with the diagnosis or treatment. *Estelle*, 429 U.S. at 107-08; *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

Nonetheless, prison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment. "One way a prison official can act with deliberate indifference is by 'consciously exposing the patient to an excessive risk of serious harm' while providing medical treatment. *LeMarbe v. Wisneski*,

10

266 F.3d 429, 439 (6th Cir.2001)." *Quigley,* 707 F.3d at 682. Deliberate indifference may be established in cases where it can be shown that a defendant rendered "grossly inadequate care" or made a "decision to take an easier but less efficacious course of treatment." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir.2002)(quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *see also Chance v. Armstrong*, 143 F.3d 698, 704 (2d Cir. 1998). A complaint states a claim when it alleges that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake,* 537 F.2d at 860; *Scott v. Amboina,* 577 F.3d at 648.

Plaintiff argues that defendants knew that he had a serious medical condition based on Dr. Stahel's August 27, 2011 medical report in which he recommended that plaintiff see a limb salvage specialist. Dr. Tabbert noted plaintiff had chronic arthritis and neuropathy and recommended that plaintiff continue to take Tramadol and Neurontin. On July 1, 2012, the same day that Dr. Tabbert made this recommendation, Dr. Cha discontinued plaintiff's medication without any medical reason. He did so to retaliate against plaintiff for exercising his First Amendment rights by filing a grievance against Dr. Cha for engaging in sexual misconduct. Plaintiff maintains that the evidence demonstrates that Dr. Cha's affidavit stating that he was unaware of plaintiff's complaints is false because plaintiff's prison medical file had a notation that a grievance

11

was reviewed on June 28, 2012. Plaintiff also argues that he suffered humiliation from the unlawful crush order.

Defendants argue that defendants did not refuse to prescribe him any pain medication; instead, plaintiff did not receive the pain medication he wanted. Defendants contend that plaintiff, who is a heroin addict, is simply attempting, by his own admission, to obtain the maximum amount of pain medication. This is supported by plaintiff's allegations against Nurse Shortt-Tucker. Plaintiff alleges that Shortt-Tucker refused to tell him the criteria used by medical staff to determine whether an individual was entitled to the maximum amount of pain medication in the form of Ultram and Neurontin. Defendants further argue that plaintiff has not been denied care; he has seen numerous physicians and had numerous appointments for his medical conditions. Defendants contend that because plaintiff has received care yet claims that the care has been inadequate, his Eighth Amendment claims is not actionable.

Defendants maintains that plaintiff's Eighth Amendment claim also fails because he failed to establish that the care and treatment provided by defendants amounted to deliberate indifference by failing to support his claim with expert testimony. Citing to his medical records is not sufficient to demonstrate that his treating physicians found that defendants' actions amounted to a breach of the standard of care.

Here, plaintiff has not come forth with any evidence demonstrating that defendants have denied reasonable requests for medical treatment in the face of an obvious need for such attention and thereby exposing him to undue suffering or the

12

threat of tangible residual injury. Plaintiff has not submitted any evidence demonstrating that he required additional surgery. Although plaintiff relies on the treatment note of Dr. Stahel, Dr. Stahel opined that surgical revision remained questionable and that there was no urgent or emergent indication for surgery in terms of acute threat to limb or life. Dr. Stahel only recommended further diagnostic work-up. Doc. 68-1. Plaintiff has continued to receive treatment, and he is prescribed pain medication. Plaintiff has not provided any evidence demonstrating that the treatment he has received is so inadequate that it constitutes a deliberate indifference to his serious medical needs.

### B. Retaliation in Violation of the First Amendment

A claim for a First Amendment retaliation has three elements: the plaintiff engaged in protected conduct, the defendant took an adverse action against the plaintiff, and this adverse action was taken because of the protected conduct. *Thaddeus-X, et. al. v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Prince easily satisfies the first element because a prisoner has a constitutional right to file grievances against prison officials. *Smith v. Campbell*, 250 F.3d 1032, 1037 (2001) (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).

The second element of a First Amendment retaliation claim is a showing that an adverse action was taken. *Thaddeus-X*, 175 F.3d at 396. In order to determine whether actions of lesser severity merit being deemed "adverse" for purposes of a retaliation claim, we adopt the standard suggested by Judge Posner in *Bart v. Telford*, 677 F. 2d 622,

13

625 (7th Cir. 1982), that an adverse action is one that would "deter a person of ordinary firmness" from the exercise of the right at stake. *Thaddeus-X*, 175 F.3d at 396. A person of ordinary firmness would likely be deterred from exercising his rights if he knew he risked losing his pain medications.

Finally, Prince must demonstrate that there is a causal connection between the protected conduct, complaining about Dr. Cha's alleged sexual misconduct, and the adverse action. "[T]he plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. *Thaddeus-X*, 175 F.3d at 399. Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Id.*" *Smith, Jr. v. Campbell*, 250 F.3d 1032, 1038 (2001).

Defendants argue that plaintiff has failed to present any evidence of a causal connection. Although plaintiff claims that Dr. Cha was aware of the grievance filed against him, the medical file notation made no reference to Dr. Cha. Plaintiff acknowledged that he has filed over fifty complaints concerning his medical care, and there is no evidence to contradict the affidavit of Dr. Cha indicating that he was unaware that a grievance had been filed against him. Defendants also argue that there is no evidence that plaintiff suffered an adverse action. Defendants maintain that because plaintiff cannot establish that any care he received was substandard, he did not suffer an adverse action.

14

Here, plaintiff alleges that he complained about a statement Dr. Cha made to him. Prince alleges that in retaliation for his complaint, Dr. Cha discontinued his pain medication. Discontinuing one's pain medication constitutes an adverse action because it is an action that would "deter a person of ordinary firmness" from exercising their First Amendment right.

Plaintiff relies on the proximity in time between his complaint and the discontinuing of his medication to demonstrate a causal connection. Although inferences drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion, there must be evidence on which the jury could reasonably find for the opposing party. Circumstantial evidence, such as the timing of events, may show motivation. *See Thaddeus-X*, 175 F.3d at 399. Although timing may be relevant to causation in retaliation cases, plaintiff has not demonstrated that the time between his complaint and Dr. Cha's actions were sufficiently close in time to demonstrate causation.  The verified complaint says that Dr. Cha made an inappropriate statement on April 6, 2012. Compl. at ¶ 16; Doc. 3 at PageID # 38. The complaint does not identify the date of plaintiff's informal complaint and grievance for sexual misconduct. *Id*. at ¶ 17. On July 3, 2012, Inspector Mrs. Morris indicated that plaintiff's grievance was untimely. *Id.* On July 3, 2012, Dr. Cha terminated plaintiff's pain medication. *Id*. at ¶ 19. Plaintiff has not demonstrated that his informal complaint and the discontinuation of his medication were sufficiently

15

close in time to demonstrate a causal connection. Temporal proximity alone does not suffice to demonstrate that Dr. Cha's motive was retaliatory in nature.

Those cases that have found temporal proximity to demonstrate causation have also typically relied on additional evidence from which causation could be inferred. *See, e.g.*, *Kounelis v. Sherrer*, 396 F. Supp. 2d 525, 531 (D. N.J. 2005) (finding that plaintiff demonstrated a suggestive temporal proximity when only 25 days had elapsed and charges brought against plaintiff were dismissed on two other occasions) *and Rauser v. Horn*, 241 F.3d 330, 334 (3rd Cir. 2001) (finding that plaintiff had demonstrated suggestive temporal proximity between his exercise of his rights"prior to January 1998" and his transfer on January 26, 1998, when on the eve of the transfer, he was threatened that if he continued to disrupt prison programs he would be punished with a denial of parole).  *See also Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-274 (2001) (noting that the use of temporal proximity to demonstrate causation must be very close).

Plaintiff's remaining claims should also be dismissed.  Although Prince argues that Dr. Keaton humiliated him by ordering that plaintiff's medications be crushed in order to discourage him from prosecuting this action, Prince has not produced any evidence to support this allegation.  Plaintiff's claim for humiliation against Dr. Stein also fails. These claims appear to be a variation of plaintiff's retaliation claim, but plaintiff has not produced any evidence of a causal connection between his protected activity and any adverse actions taken by Drs. Keaton or Stein.  Plaintiff also has not offered any evidence to support a claim for conspiracy against Drs. Keaton and Cha.

16

Plaintiff's remaining allegations concerning claims of humiliation are not asserted against any defendants in this matter. *See* doc. 87 at PageID # 436-37.

## V. Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that defendants Dr. Cha, Dr. Keaton, Dr. Stein, Nurse Shortt-Tucker and North Central Correctional Complex ("NCCC")'s February 28, 2014 motion for summary judgment (doc. 35) be GRANTED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/Mark R. Abel  
United States Magistrate Judge
